30 C.C.P.A. (Patents)

## In re STANLEY.
### No. 4678.

Court of Customs and Patent Appeals.

Feb. 1, 1943.

922

Charles E. Carney, of Cleveland, Ohio (A. Ponack, of Washington, D. C., of counsel) for appellant.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel) for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner denying patentability of all the claims, numbered 48 to 56, inclusive, of appellant's application for patent entitled "For Confection Composition and Method of Manufacture."

Claims 48 to 51, inclusive, are article claims. The remainder are for the method of manufacture. For illustrative purposes we quote the broad claims 48 and 52:

(48) A confection composition of the kind in which a solid comminuted material is dispersed in a fatty material, said composition also containing a salt of a carboxylic acid having balanced hydrophillic and lipophillic portions, the hydrophillic portion being the group COOX in which X is a basic atom or group, and the lipophillic portion is the aliphatic residue of a fatty acid having more than six carbon atoms.

(52) The method of improving confection compositions of the type in which solid comminuted material is dispersed in a fatty material, which comprises incorporating throughout said composition a salt having balanced hydrophillic and lipophillic portions, the lipophillic portion being the group COOX in which X is a basic atom or group, and the lipophillic portion is the aliphatic residue of a fatty acid having more than six carbon atoms.

It appears that all the claims stand or fall together, there being no patentable distinction between them. It is unnecessary, therefore, to detail the limitations appearing in those not quoted.

The brief on behalf of appellant states:

The invention relates to confection compositions of the type in which a solid comminuted material is dispersed in a fat. Chocolate is an outstanding example of such a confection, and the invention has particular reference to such a material. In chocolate the solid material is called cacao matter, and is composed of the ground solids of the cocoa nibs. The fatty material is the cocoa butter, chocolate usually containing an excess of cocoa butter over that naturally present in the nibs. Chocolate may also contain sugar and/or milk solids. In substitute chocolate hydrogenated oils or similar fats are substituted for the cocoa butter.

The particular problem with which applicant is concerned is the reduction of the viscosity of chocolate and similar confection compositions. By lowering the viscosity a reduction in the amount of fat necessary to produce a working consistency is made possible, and at the same time the so-called "graying" or fat bloom of chocolate is retarded. Applicant accomplishes the lowering of viscosity by incorporating a small amount of a salt of a carboxylic acid having balanced hydrophillic and lipophillic groups. The hydrophillic portion is the group—COOX, in which X is a basic atom or group such as a metal radical like sodium or magnesium, the ammonium radical, organic amine radicals, etc. The lipophillic portion is a residue of a fatty acid containing more than six carbon atoms. Thus the modifying ingredients contemplated include the ordinary soaps, and such soaps are preferred materials for use in accordance with the invention.

Preferably the salt is incorporated in the confection by being first dispersed in a fatty carrier such as oils, fats, waxes, or their fatty acids.

The examiner cited the following references:

| Lallemand | 852,966 | May 7, 1907 |
| Baker | 1,553,294 | Sept. 8, 1925 |
| Working | 1,781,672 | Nov. 11, 1930 |
| Harris | 2,025,986 | Dec. 31, 1935 |
| Coith et al. | 2,123,880 | July 19, 1938 |
| Margarine — Clayton, Page 67. Pub. by Longmans, Green & Co., London, 1920. | | |

Following their citation the examiner in his statement after the appeal to the board said: All the claims have been rejected as lacking invention over Baker, Lallemand, Coith, and Clayton in view of Har-

ris and Working. The latter patentees show the addition of lecithin to chocolate confections for the express purpose of retarding graying and thus the separation of fat. The interface modifiers of Working and Harris are noted to have both lipophillic and hydrophillic groups therein. Baker, Lallemand and the excerpt from "Margarine" all show an oil composition containing "an inocuous metallic hydrophillic atom or atoms combined with a fatty acid having * * * more than six carbon atoms," the latter functioning as the lipophillic part of the molecule. The position is taken that inasmuch as Baker or Clayton, for example, suggests the use of a protective agent in the form of Metallic soaps in place of lecithin described by Working and Harris, no invention is seen to reside in such substitution, especially where the function of the metallic soap is much the same. Applicant has urged the unexpected lowering of the viscosity when metallic soaps are employed as the interface modifier. Such a result however, is thought the expected one as note the similar result obtained by Working, * * *.

In its decision the board said:

The claims are rejected as lacking invention over the prior art as discussed by the examiner. The patents to Harris and Working show the addition of several reagents to chocolate confections for the purpose of retarding "graying" and thus the separation of fat. The interface modifiers of these patents have both lipophillic and hydrophillic groups therein.

The examiner takes the view that inasmuch as Baker suggests the use of a protective agent in the form of a metallic soap in place of lecithin, no invention is seen to reside in such substitution as the function of the metallic soap is much the same. We note that Baker refers to both lecithin and soaps as useful protective agents in the stabilization of a fatty emulsion. While he is concerned primarily with the use of shortening in the making of pie crusts, we agree with the examiner that Baker suggests the substitution of soap for lecithin as used by Working. We are not satisfied with appellant's showing of any unexpected result due to such substitution.

Clayton is considered cumulative.

The decision of the examiner is affirmed.

The disclosures of the respective references recited by the tribunals of the Patent Office are not questioned before us by appellant but he claims nevertheless that invention on his part was involved "in the use of the salts claimed for reducing the viscosity of chocolate and similar compositions." It is insisted that the use he makes of the salts is not obvious and that he obtained improved results by such use.

One contention of appellant is that the Baker patent does not disclose the use of soap and lecithin alternatively as equivalents for Baker's purpose, but that he uses the soap and lecithin (a phosphatide) together for purposes different from that of appellant.

As we understand it, the alleged difference is based upon the theory that Baker's use of the ingredients is for the preparation of an emulsion while, it is claimed, in appellant's composition there is no emulsion. The brief on his behalf before us states: The Baker patent * * * is directed solely to the preparation of an emulsion in which an oily material and an aqueous material are emulsified. In other words, the problem presented is solely one of dispersing one liquid in another, the two liquids being immiscible. In appellant's composition there is no emulsion, the composition being one in which a solid comminuted material is disposed in a fat or oily material.

Whether the viewpoint so expressed before us was presented before the tribunals of the Patent Office is not clear from the record, but, however that may have been, it clearly appears from the specification of appellant's application that he had emulsions in mind. The terms "emulsifying agents" and "emulsion" are several times used therein.

For example, at one place it is said: In the case of those compositions in which the comminuted material is dispersed in the fat in the presence of a small amount of water the ingredients of the present invention also act as emulsifying agents to stabilize the emulsion at the high temperatures employed.

The specification further recites: I have discovered that if certain salts containing both hydrophillic and lipophillic groups are added to compositions of the type described that the viscosity will be reduced and in the case of toffees and the like the emulsification at the higher temperatures employed is enhanced.

In view of the specification it would seem that the effort now made to create a distinction upon the basis of the term "emulsion" is in the nature of an afterthought.

We have carefully studied appellant's analysis of the Baker patent (which is representative, upon the point under discussion, of the Lallemand, Coith et al., and Clayton references) and the argument based thereon together with the authorities cited, and as a result of such study we are not convinced that the decision appealed from was erroneous.

From the brief filed before us by the Solicitor for the Patent Office we quote, with approval, the following statement: The rejection is simple enough. The premises are that the Working and Harris patents teach the use of lecithin and lecithin substitutes, having hydrophillic and lipophillic portions, as emulsifying agents in chocolate, and that the Baker patent, as representative of a group, teaches the use of soaps, which, of course, also contain hydrophillic and lipophillic portions, as emulsifying agents of general application. The conclusion is that there is no invention in substituting soap for the former compounds in the emulsification of chocolate, an emulsion, a fat-solid emulsion.

The decision of the board is affirmed.

Affirmed.